**Kathleen Marie MARTZ, Petitioner–Appellant,**

**v.**

**Robert Dingel MARTZ, Respondent–Respondent.**

**No. SD 29838.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 3, 2010.

Motion for Rehearing and Denied Sept. 27, 2010.

Application for Transfer Denied Nov. 16, 2010.

William J. Fleischaker, Joplin, MO, for Appellant.

Walter E. Williams, Joplin, MO, for Respondent.

DON E. BURRELL, Judge.

Kathleen Marie Martz ("Mother") timely appeals from the circuit court's "Order and Judgment Adopting Commissioner's Findings and Recommendations" entered April 14, 2009, which awarded Mother a monetary judgment against Robert Dingle Martz ("Father") of $938.25 plus $1,091.75 in attorney fees.[1] The judgment found that additional alleged expenses related to the parties' son that Mother sought were not shown to be "reasonable" or "envisioned by the separate order in the judgment of dissolution."[2]

1. Although the pleading that began the process that resulted in this judgment was Mother's amended motion to modify the parties' dissolution decree, the parties eventually stipulated that their son had become emancipated, and the only issue actually litigated was Mother's motion to enforce a portion of the dissolution decree that ordered Father to reimburse Mother for one-half of their children's medical expenses.

2. The "separate order in the judgment of dissolution" directed the parties to share equally "all medical, psychiatric, psychological, optometrist, dental and orthodontic bills incurred by children" (hereafter referred to as "decretory medical expenses"). During trial, the claimed expenses were generally referred to as "medical expenses," although the trial court addressed the need to "unravel" what was education, psychiatric, and psychological expenses. In her amended motion to modify, Mother sought both medical and educational expenses. At trial, Mother sought only medical expenses, arguing that the education, room, board, and other expenses she sought were included as medical expenses. In her proposed findings of fact and conclusions of law, Mother characterized the claim as ex-

Mother's sole point on appeal asserts "that the Court's finding that Mother failed to meet her burden of proof to establish that said expenses were medical expenses because she produced no expert testimony that the expenses were reasonable and necessary erroneously declared the law in that by establishing that the expenses were deductable [sic] under [Internal Revenue Code] Section 213 Mother met her burden of establishing that said expenses were [decretory medical expenses] as contemplated by the judgment of dissolution of marriage." Finding no such erroneous declaration of the law by the trial court, we affirm its judgment.

### Factual and Procedural Background

In this court-tried case we view the facts in the light most favorable to the judgment. *Wightman v. Wightman*, 295 S.W.3d 183, 187 (Mo.App. E.D.2009). Our summary of the facts is set forth in accordance with that standard. The parties' marriage was dissolved on April 12, 2001. The dissolution judgment awarded the parties joint legal and physical custody of their three children. The parties were ordered to share equally all decretory medical expenses. Mother testified that in 2004, their youngest child ("Son") began experimenting with drugs, exhibited behavioral problems, became violent, had an encounter with the police, and was involved in two car accidents. Mother took Son to two local facilities for drug-abuse treatment, but Son did not participate.

Father had stopped exercising his weekend visits with Son and was out of the country when Mother decided to send Son out-of-state for treatment at Northwest Academy in Idaho. Mother testified that she had had difficulty in reaching Father and neither sought his input nor informed him of her decision to do so.[3] Mother testified that she relied on a local facility's recommendation that Son needed inpatient medical treatment when she decided to contact Northwest Academy, but no documentation of that recommendation was offered into evidence.

In August 2004, Son was taken against his wishes to Idaho to participate in a month-long wilderness program called "Ascent," followed by an additional program for troubled teens at Northwest Academy's campus. Mother traveled from Missouri to Idaho on four separate occasions to visit Son and participate in his treatment. Father also went to Idaho to visit Son on one occasion. Mother testified that when Son returned home to Missouri in March 2005, he was much better and went on to graduate from high school.

The evidence presented at trial consisted of Mother's testimony and testimony from her accountant. Father's attorney cross-examined Mother and the accountant, but Father did not attend the trial and no witnesses were presented on his behalf.

---

penses for "medical, psychiatric, psychological, optometrist, dental or orthodontic bills incurred by one of the parties' minor children which are not covered by insurance." The trial court concluded that the claim was to enforce the clause in the dissolution decree directing the parties "to pay 50% of all medical, psychiatric, psychological, optometrist, dental and orthodontic bills incurred by children."

**3.** The trial court's findings on this matter were that "[Mother] acknowledged she did not notify [Father] or his attorney in advance of [Son]'s placement at Northwest Academy. She did not seek court permission in advance of the placement." While the court acknowledged Mother's "testimony [that] she sent [Father] an e-mail to give him a head start on the—or a heads up on the school," it noted that "she doesn't have the e-mail." After Son was taken to Idaho, Mother did obtain a temporary order that prohibited Father from removing Son from Northwest Academy.

Exhibits introduced into evidence by Mother included her tax returns and various spreadsheets containing amounts Mother said represented expenses she incurred in connection with Son's time in Idaho, including payments made to Ascent, Northwest Academy, and the service that transported Son to Idaho. No original receipts or bills for any of these claimed expenses were offered at trial.

Exhibit 1 listed expenses totaling $1,876.50. Mother testified that she paid these amounts in 2004 and 2005 on medical bills for Son that were not associated with Ascent or Northwest Academy. Exhibit 2 listed two 2004 payments and two 2005 payments to Northwest Academy, and one payment each to Ascent and "CEDU Education(escorts) [sic]" in 2004. These payments totaled $57,613.30. Exhibit 3 listed expenses totaling $2,539.27 that Mother said were for Son's clothing and supplies while attending the programs in Idaho. This exhibit listed payments for clothing and supplies by payee, such as "Express" and "Wal–Mart," but did not indicate the items actually purchased.

Exhibit 4 showed a total of $5,028.85 in expenses Mother said she and other family members incurred in visiting Son in Idaho. This exhibit listed the travel expenses by payee, but did not associate the expenses with any particular person or persons. Exhibits 6 and 7 were Mother's tax returns for the years 2004 and 2005. Exhibit 8 was a summary exhibit representing 50% of the expenses listed in exhibits 1 through 4 (plus an additional travel expense) and interest on those amounts calculated at 9% per year. It also included a request for attorney fees of $1,091.75. The total amount Mother asked the trial court to order Father to pay, as reflected in Exhibit 8, was $46,022.31.

Mother's accountant testified that he relied on a packet of information from Northwest Academy indicating that the expenses associated with the school were tax deductible as "medical expenses related to mental, physical, as well as emotional expenses" under "IRS Code, Section 213[.]" That packet was not introduced as evidence. Mother claimed all of the expenses set forth in her exhibits as medical expenses on her taxes, and as a result, achieved some tax savings. Mother claimed Father should share these expenses equally as they all constituted decretory medical expenses. After the attorneys presented closing arguments, the commissioner asked counsel to provide him with relevant case law and took the matter under submission.

Just over a month later, the court issued its judgment. The commissioner's written findings (adopted by the court) were that "[t]he credible evidence does not allow the Court to make the findings that the expenses claimed in Exhibits 2 [payments to Ascent, Northwest Academy and the transportation service], 3 [clothing and supplies] and 4 [travel expenses for Mother and other family members] were reasonable or were expenses envisioned by the separate order in the judgment of dissolution." Additional findings in the judgment were:

> The record is absent of any materials from Northwest Academy including course of treatment, goals of treatment, admission records, discharge records, nursing notes, doctor's notes or narratives from any mental health professionals-materials which might have helped the Court in its determination of reasonableness. Lastly, there was no expert testimony from a professional in the field of drug treatment that might have been able to shed light on this child's needs and what treatment or programs were available to address those needs. The Court is unable to conclude what

part of the amount claimed was related to psychological or psychiatric care for [Son]. The Court is unable to conclude the amount claimed for "[Son's] School Expenses" is reasonable.

As to the expenses set forth in Exhibit 1, the trial court found that they did "appear to be the types of services envisioned by the Judgment of Dissolution, page 12, requiring each party to pay 50% of all medical, psychiatric, psychological optometrist, dental and orthodontic bills incurred by children[,]" and Father was ordered to pay $938.25—half of the expenses set forth in Exhibit 1. The trial court also ordered Father to pay $1,091.75 in legal fees Mother had incurred in prosecuting her amended motion to modify. All other relief Mother requested was denied.

### Analysis

■ "We will not disturb an order modifying a child support obligation unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Wightman,* 295 S.W.3d at 189 (internal citations omitted). In her point relied on, Mother asserts that the trial court "erroneously declared the law" in "finding that Mother failed to meet her burden of proof ... because she produced no expert testimony that the expenses were reasonable and necessary...." Father counters that the judgment should not be set aside unless it is against the weight of the evidence. *Schriner v. Edwards,* 69 S.W.3d 89, 92 (Mo.App. W.D.2002). He rightly points out that the trial court is entitled to deference in its determination of witness credibility and "that the [trial] court is free to accept or reject all, part or none of the testimony presented." *Christian Health Care of Springfield West Park, Inc. v. Little,* 145 S.W.3d 44, 48 (Mo.App. S.D. 2004).

When the trial court's judgment is viewed in its entirety, we believe it is clear that Mother is misinterpreting the trial court's references to the fact that she presented no expert testimony that the expenses set forth in her spreadsheets were "reasonable and necessary." If Mother's interpretation of the trial court's basis for its decision were correct, the result would have been a finding that she failed as a matter of law to meet her burden of producing competent evidence. What we have instead is a judgment that indicates the court considered Mother's evidence and simply found it insufficiently persuasive.

■ In the absence of a specific statute or rule that provides otherwise, "[t]he party asserting the positive of a proposition bears the burden of proving that proposition." *Dycus v. Cross,* 869 S.W.2d 745, 749 (Mo. banc 1994); *see also Crews v. Crews,* 949 S.W.2d 659, 668 (Mo.App. W.D.1997). Mother has not pointed us to any authority that would exempt her from her obligation to persuade the trial court that Father should be ordered under the terms of the dissolution decree to reimburse her for half of all of the expenditures she said were necessary to treat Son's drug addiction.

■ "[W]here a party has the burden of proof on an issue and where the evidence presented thereon is not conclusive, a judgment in favor of the opposing party requires no evidentiary support because the trier of fact may disbelieve the proponent's uncontradicted or uncontroverted evidence." *Stiff v. Stiff,* 989 S.W.2d 623, 628 (Mo.App. S.D.1999) (citing *Bakelite Co. v. Miller,* 372 S.W.2d 867, 871 (Mo. banc 1963)). Mother has not cited any authority that would remove her from the application of this general rule. Nor has she cited any authority that would prevent Father from falling under the general rule

that "the party not having the burden of proof on an issue need not offer any evidence concerning it." *Brown v. Mustion*, 884 S.W.2d 365, 369 (Mo.App. S.D.1994).

▆▆▆ A party's own testimony is sufficient to sustain an award on matters like child support and past necessary expenses—no expert testimony is required. *DeCapo v. DeCapo*, 915 S.W.2d 343, 350 (Mo.App. W.D.1996). But simply producing evidence that, if believed, would be sufficient to support an award is not the same thing as convincing the fact-finder that the proposition is more likely true than not true. Even though testimony unsupported by documentation is admissible, it may not be persuasive. "The trial court may, at its option, accept or reject such evidence." *Blair v. Blair*, 571 S.W.2d 480, 482 (Mo.App.St.L.D.1978). The trial court is in a superior position to assess credibility, *Mayben v. Garren*, 286 S.W.3d 854, 858 (Mo.App. S.D.2009), and may accept or reject all, part, or none of a witness's testimony. *Crews*, 949 S.W.2d at 665.

▆▆▆ Mother argues that because her accountant testified that the expenses shown in Exhibits 1–4 were deductible as medical expenses for federal income tax purposes, the trial court erred in not finding that the expenses should be shared by Father. In *Lay v. Lay*, 912 S.W.2d 466, 470 (Mo. banc 1995), our Supreme Court held "that the term 'medical expenses' provides limiting criteria sufficient for the trial court to determine the parties' obligations, such that [a provision for "medical expenses" in] the decree is valid and enforceable." In doing so, it also stated "that everyday usage of the term, supplemented by the Internal Revenue Code's definitions, will sufficiently guide parties on this issue in the future[ ]" and that "parties are free to define further their medical expense provisions in order to fit more precisely their

situations." *Id.* Thus, under *Lay*, federal tax definitions may guide, but do not exclusively control, the definition of "medical expenses" in the family law context.

In the case at bar, the trial court noted that no expert testimony was offered concerning Son's needs and treatment options or comparing the Idaho program to others that might have been more economical. The judgment also stated that the evidence offered by Mother did not indicate what expenditures were for education and room and board as opposed to drug treatment. These statements are not the equivalent of a pronouncement by the trial court that Mother could not prevail without such expert testimony; rather, the trial court found that it was not persuaded by the evidence Mother had produced and discussed likely sources of evidence, including experts, admission records, narratives from mental health professionals, and other supporting documentation that *"might have helped* the Court in its determination of reasonableness." (Emphasis added). We believe the judgment indicates that the testimony given by Mother and her accountant simply did not convince the trial court that the expenses set forth in exhibits 2 through 4 were "medical expenses as envisioned by *Lay, supra,* and they are not expenses listed in [the dissolution] judgment."

Mother argues that the trial court erroneously required proof that the expenses were "reasonable and necessary" and cites *Krane v. Krane*, 912 S.W.2d 473 (Mo. banc 1995). *Krane* was published immediately after *Lay* and similarly focused on the enforcement of various expenses described in a modification agreement. *Krane* held that the medical expenses provision in a particular modification agreement was not unclear and could be enforced. 912 S.W.2d at 475–76. The court stated that the mother "adduced sufficient, uncontro-

verted evidence relating to medical expenses ..." and noted that "in order to make the medical expense provision certain, [the mother] needed only to adduce evidence regarding the specific amount of the bills [the father] had not paid, which was, in fact, what [the mother] did." *Id.* at 475 & 475 n. 1. But *Krane* also held that while the father's obligation to pay summer camp expenses was enforceable, if the mother selected an expensive or distant new camp, the court could fashion relief by considering what the former camp cost and "give father relief from any excess." *Id.* at 476. Neither *Lay* nor *Krane* support Mother's argument that deductibility under the Internal Revenue Code is conclusive proof that such expenditures are reimbursable medical expenses under a particular dissolution decree and deprives a trial court of the ability to give that evidence the weight it believes appropriate.

Mother argues that "[t]his is not a personal injury case where a party is normally required to present expert evidence as to whether or not medical expenses were necessary and reasonable." But the very case Mother relies on uses the phrase "reasonable and necessary" when it states, "This Court would construe the term 'medical expenses' to carry with it the implied qualification that the term covers only that conduct that is *reasonable and necessary* to diagnose, treat, or prevent any ailment or disease that affects the body or a function of the body." *Lay*, 912 S.W.2d at 470 (emphasis added). *Krane* also quotes this passage from *Lay* when it discusses the fact that the term "medical expenses" is not too ambiguous or uncertain to be enforceable. 912 S.W.2d at 475.

In discussing the evidence presented in the instant case, the trial court asked itself the following question: "are the charges the mother seeks reimbursement for reasonable and necessary?" It then discussed payments to the schools, stating: "There was no supporting documentation introduced to show what the expenditures were for and what the cost of treatment was versus the cost of education, room, board, meals and books. In fact, there is no reference to psychiatric or psychological treatment at all." The court then discussed payments for clothing and supplies to attend the programs, along with travel expenses, stating:

No supporting documentation was submitted other than the [Mother's] testimony and her demonstrative evidence represented by Exhibit 3.... No supporting documentation was submitted other than the [Mother's] testimony and her demonstrative evidence represented by Exhibit 4. No authority has been cited that these are medical expenses as envisioned by *Lay, supra,* and they are not expenses listed in [the dissolution judgment].

Although the trial court also used the term "necessary" in its judgment when discussing the legal issues it was called upon to resolve, it did not base its decision on any finding that Mother had failed to prove that the charges were for medically necessary treatment. Its conclusion was that Mother had failed to persuade it that the expenses contained in exhibits 2, 3, and 4 "were reasonable or were expenses envisioned by the separate order in the judgment of dissolution." As a result, we do not have to determine whether *Lay* established any burden to prove medical necessity by expert testimony.

■ Mother also asserts that Father did not file an answer to Mother's motion to modify, and "[i]n the absence of any responsive pleading or evidence from [Father,] Mother believes that [the court] should accept as fact that because the itemized expenses were legitimate medical

expenses under the Internal Revenue Code Section 213 that her evidence is therefore sufficient to meet her burden to establish that [Father] is liable for one half of these expenses." This argument fails because there is no duty to file a responsive pleading when a motion to modify is filed. *See In re Alred,* 291 S.W.3d 328, 331 (Mo.App. S.D.2009). And while Father did not put on his own evidence, his attorney did challenge Mother's proof by the cross-examination of her witnesses.

The programs Son attended in Idaho may very well have been good for him; nothing in the trial court's judgment suggests they were not. But the trial court did not have to accept the unsupported testimony of Mother and her accountant as proof that the expenses she sought reimbursement for were all reimbursable decretory medical expenses. *See Blair,* 571 S.W.2d at 482. Further, even if the court believed that Mother had relied on a recommendation that Son receive inpatient treatment, it did not have to conclude that every expense incurred at Northwest Academy was thereby reasonable.

As the party asserting the proposition, it was up to Mother to prove to the trial court by a preponderance of the evidence her claim that each of the expenses she listed in her exhibits constituted reimbursable decretory medical expenses. When she decided to present her proof in the form of lump sums unsupported by any documentation and did not itemize the expenses she claimed in a manner that would allow the court to easily identify and weed-out any non-qualifying ones, she bore the risk that her proof would, in like manner, be wholly rejected. We should also point out that the court was free to reject the accountant's testimony that all of the expenses Mother was claiming were deductible under federal tax rules based upon an undisclosed packet of information he had received from Northwest Academy.

The trial court did not rule that Mother's claim failed as a matter of law because she did not produce an expert to testify that the expenses she asked the court to order Father to pay were both reasonable and medically necessary. Mother's point is denied; and the court's judgment is affirmed.

BARNEY, J., and BATES, P.J., concur.